UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

PAUL F. SHEDLOCK,
    Petitioner,

v.                                      CIVIL ACTION NO. 16-12152-PBS

STEVEN J. O'BRIEN,
    Respondent.

REPORT AND RECOMMENDATION
ON PETITION FOR WRIT OF HABEAS CORPUS (#1).

KELLEY, U.S.M.J.

I. Introduction.

On October 25, 2016, Paul Shedlock filed a petition for a writ of habeas corpus under 28 U.S.C. § 2254 against Steven O'Brien, Superintendent of the Massachusetts Treatment Center in Bridgewater, Massachusetts, for relief from his December 2005 civil commitment under Mass. Gen. L. ch. 123A as a sexually dangerous person (SDP). (#1.) Shedlock based his petition on three grounds: (1) that he was denied his Fourteenth Amendment "right to proceed pro se" at his SDP trial, *id.* at 6; (2) that his Fourteenth Amendment "right to a timely determination" of dangerousness was violated, *id.* at 8; and (3) that the state court judge's SDP decision was "based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceedings," *id.*

On November 13, 2017, this court issued a report and recommendation to Chief Judge Patti Saris, finding that Shedlock had not exhausted the third issue, that the state court judge's decision was based on an unreasonable determination of the facts, and further finding that a stay

was not warranted under *Rhines v. Weber*, 344 U.S. 269, 275-76 (2005). (#22.) The court recommended that petitioner be given the option of voluntarily dismissing the unexhausted claim, so that the petition could be entertained on the two remaining claims, or, if petitioner did not wish to dismiss the unexhausted claim, that the entire petition be dismissed. *Id*.

Petitioner filed a notice of voluntary dismissal of the third issue (#23), Chief Judge Saris adopted the report and recommendation (#25), and both parties filed revised pleadings (## 27-29).

After considering the parties' submissions, for the reasons set out below, this court recommends that the petition be DENIED.

## II. SDP Proceedings.

On November 8, 2002, the Commonwealth of Massachusetts filed a petition in the Plymouth County Superior Court to commit Shedlock as an SDP. (SA at 4.)[1] Shedlock was fifty years old at the time of the filing. (SA at 126.) The Massachusetts Appeals Court (MAC), in a decision on an interlocutory appeal taken in the course of the SDP proceedings, found the following facts concerning his history. In 1976, Shedlock was charged with raping a 19-year-old female hitchhiker; during the rape he threatened to cut out her tongue. *Commonwealth v. Shedlock*, 58 Mass. App. Ct. 445, 447 (2003). Shortly before trial he defaulted and fled to Texas. *Id*. While there he forced his way into a young couple's hotel room, raped the woman, robbed the couple, and threatened their lives with a gun. *Id*. He was sentenced to six years for this offense; after he was paroled, he was sent back to prison in Texas for two more years for attempted burglary in a different case. *Id*. He was eventually brought to Massachusetts by interstate rendition proceedings, was tried and convicted on the 1976 charges, and in 1986 was sentenced

---

[1] The respondent's supplemental answer (#16) will be cited as SA at (page number).

to eight to fifteen years on the rape conviction. *Id*. In September 1989, he escaped and was at large for 121 days. *Id*. He was arrested in New Jersey, was returned to Massachusetts, and was sentenced in March 1990 to two to three years for the escape, to run consecutively to the sentence for rape. *Id*. at 447-448.[2]

When an SDP petition is filed, as an initial matter the court "shall determine whether probable cause exists to believe that the person named in the petition is a sexually dangerous person." Mass. Gen. L. ch. 123A § 12(c). Under § 12(e), if a prisoner is scheduled to be released from custody "prior to the court's probable cause determination, the court, upon a sufficient showing based on the evidence before the court at that time, may temporarily commit such person… pending disposition of the petition." While the statute does not set a time limit for holding the probable cause hearing, the Supreme Judicial Court (SJC) has held that "absent unusual circumstances, a probable cause hearing should commence no later than ten business days after a temporary commitment order is made under § 12(e)." *Commonwealth v. Bruno*, 432 Mass. 489, 513 (2000).

After the Commonwealth filed the petition against Shedlock on November 8, 2002, a probable cause hearing was scheduled for November 14 and an attorney was appointed to represent him. (SA at 4.) For reasons that are not clear from the docket, the probable cause hearing was continued to December 4. *Id*. Prior to the December 4 hearing, a new attorney, Michael Farrington, filed a notice of appearance. *Id*. On December 4, the first appointed attorney's motion to withdraw was allowed and the case was continued to December 9. *Id*. It is not clear from the docket what happened on December 9, but the case was continued to

---

[2] The sentences for rape and escape were "aggregated according to Department of Correction regulations" and after factoring in "good time credits," his release date was December 13, 2002. *Shedlock*, 58 Mass. App. Ct. at 448.

3

December 12. *Id*. On December 10, Judge Ball entered an order of temporary detention under § 12(e) and continued the case to December 12 "RE: status of Detention." *Id*. On December 12, Judge Brady denied the Commonwealth's motion for temporary detention, but granted the Commonwealth a stay of Shedlock's release pending the Commonwealth's appeal to the MAC. *Id.* at 5.

In June 2003, the MAC found that Judge Brady erred in denying the Commonwealth's motion for temporary detention. *Shedlock, supra*, 58 Mass. App. Ct. at 458.[3] Further appellate review was denied by the SJC on September 5, 2003. *Commonwealth v. Shedlock*, 440 Mass. 1102 (2003) (table).

Back in the Plymouth Superior Court, on November 5, 2003, Shedlock filed a motion to dismiss the case for violation of his procedural due process rights, specifically, that he had been confined for longer than ten days without a probable cause hearing in violation of the holding in *Commonwealth v. Bruno*, *supra*. (SA at 5, 290-300.) This motion was denied on November 24, as Judge Troy, listing the numerous reasons for the delay up to that point, found that "there are

---

[3] Shedlock had raised what the MAC characterized as an "important unresolved issue" before the court below, namely, whether when a prisoner is serving a sentence both for a sexual offense and a consecutive sentence for a non-sexual offense, the Commonwealth is required to file an SDP petition near the end of the sentence for the sexual offense, rather than near the end of the consecutive sentence for the non-sexual offense. *Shedlock*, *supra*, 58 Mass. App. Ct. at 445-446. Judge Brady had held that based on Shedlock's "repeated and vicious sexual assaults, his long and violent criminal record, his history of substance abuse, his refusal to engage in a sex offender program while incarcerated, his high score on a statistical measure of recidivism," his history of flight based on his lengthy default on certain charges and an escape from prison in 1989, and a report as to the likelihood of his reoffending filed by the Commonwealth's expert, he had "no doubt" that the Commonwealth had made a sufficient showing under the statute for a temporary commitment pending a probable cause hearing. *Id*. at 449. Nevertheless, Judge Brady found that "because the defendant was not serving a sentence for an enumerated sexual offense at the time the petition was filed, he could not be in the class of individuals eligible for civil commitment as a sexually dangerous person." *Id*. The MAC held that contrary to Judge Brady's ruling, the Commonwealth had timely filed the petition against Shedlock, as it was appropriately filed at the time of "the defendant's imminent release into the community, at the end of all the continuous sentences he [was] serving, and not at the end of that portion of his ongoing incarceration technically attributable to his sexual offense." *Id*. at 458. The MAC also agreed with the trial court that the Commonwealth had made a sufficient showing for Shedlock's temporary commitment pending a probable cause hearing. *Id*.

4

special circumstances in this case which warrant delay prior to the [probable cause] hearing." *Id*. at 471. On the same day, Shedlock filed a motion to proceed pro se in which he complained about his counsel's performance, but the court, following a hearing, took no action on the motion. *Id.* at 6, 284-285.

In December 2003, Shedlock's counsel moved to continue the probable cause hearing, to allow time for the filing of an interlocutory appeal on the denial of the motion to dismiss; Shedlock filed an assent to the continuance and a waiver of any rights pertaining to the delay of his probable cause hearing. *Id*. at 6, 209. Shedlock's application for interlocutory appeal was denied by the Single Justice of the MAC in January 2004. *Id*. at 301.

In January 2004 the parties skirmished over discovery. Shedlock opposed discovery requested by the government, including a request that he undergo an evaluation by a Commonwealth expert. *Id*. at 6-7, 312-318. Judge Walker allowed the Commonwealth's motion, and the probable cause hearing was stayed until Shedlock complied with the discovery order. *Id*. at 319-321. After a hearing on February 5, 2004, Judge Ball found probable cause. *Id.* at 8.

In April 2004, the Commonwealth filed reports from two qualified examiners as required by the SDP statute and requested a trial date.[4] *Id*. The trial was scheduled for September 2004, but the docket reflects that on the trial date the Commonwealth moved for discovery. *Id*. A conference was held on December 14, 2004, but counsel for Shedlock apparently did not appear. *Id.*

---

[4] Mass. Gen. L. ch. 123A, § 1 defines a qualified examiner as a physician or psychologist with certain qualifications who is designated to serve as such by the commissioner of correction. § 13(a) provides that after probable cause has been found, the prisoner "shall be committed to the treatment center for a period not exceeding 60 days for the purpose of examination and diagnosis under the supervision of two qualified examiners…."

In April 2005, Shedlock filed a motion to dismiss counsel as well as a motion to dismiss because of the delay in getting to trial.[5] *Id.* at 8, 168-175. The government filed a motion to reschedule the trial and to schedule a pretrial conference. *Id.* at 8. In June, the government filed two additional qualified examiner reports. *Id.* In July, Shedlock filed another motion to dismiss for "failure to start trial in sixty days" and also filed a motion to proceed pro se. *Id.* at 8-9. A hearing was scheduled for August 19, 2005. *Id.*

In his motion to proceed pro se, Shedlock argued that any further delay to allow new counsel to familiarize themselves with the case would impinge on his liberty interest. *Id.* at 162. At the hearing on August 19 before Judge Delvecchio, in response to a question from the judge about the motion ("Mr. Shedlock, what about this?"), Shedlock stated that his "motion to proceed pro se is simply relative to the motion to dismiss the petition." *Id.* at 187. There followed a discussion about how any new counsel would take time to get up to speed on the case, and the judge, after hearing from the government as to why the case had taken so long to progress, stated that within one week she would appoint new counsel and have a hearing, at which a trial date would be set and discovery issues would be resolved. *Id*. at 187-193. Shedlock's motion to proceed pro se was denied, the two attorneys who had been representing him were allowed to withdraw, and new counsel was appointed. *Id.* at 9. Neither Shedlock nor the two counsel who were present objected to the judge's decisions. *Id.* at 186-193.

---

[5] Mass. Gen. L. ch. 123A, § 14(a) requires that "the Commonwealth must ensure that trial is commenced within sixty days [of its petition for trial] unless the judge makes a finding, based on supporting evidence, that there is good cause to continue the trial or that it is otherwise in the interests of justice to do so." *Commonwealth v. DeBella*, 442 Mass. 683, 689 (2004).

At a hearing on August 26, 2005, Shedlock's new counsel, Edward Harwig, entered an appearance and both of Shedlock's outstanding motions to dismiss were denied. *Id.* at 9, 197-207, 337.

Shedlock immediately filed another interlocutory appeal, which the Single Justice of the MAC denied in September 2005. *Id*. at 338-339. The jury-waived trial on the petition to commit Shedlock as an SDP began on November 28, 2005, and Judge Brady issued a decision on December 5, 2005, finding that the Commonwealth had proven beyond a reasonable doubt that Shedlock was a sexually dangerous person and committing him to the treatment center for an indeterminate term.  *Id.* at 262-268 (trial court's findings and order).

### III. Post-Trial Procedural History.

On January 3, 2006, Shedlock filed a notice of appeal to the MAC. *Id.* at 10. He raised five issues: (1) that he was denied the right to a speedy probable cause hearing; (2) that he was denied the right to proceed pro se; (3) that he was denied the right to a speedy trial; (4) that his counsel was ineffective; and (5) that the trial judge erred in finding him to be currently sexually dangerous and likely to sexually reoffend. *Id.* at 35. The MAC denied this appeal and affirmed the trial court's finding in an unpublished decision. *Id.* at 27-29; *Commonwealth v. Shedlock*, 87 Mass. App. Ct. 1136 (table), No. 12-P-1263, 2015 WL 4374027 (Mass. App. Ct. July 17, 2015).

With regard to the first issue, the denial of his right to a speedy probable cause hearing, the MAC found that there were exceptional circumstances, including an interim appeal, that accounted for the delay in holding the hearing, and stated that in any event, "the statute does not contemplate dismissal of a petition as a remedy for such delay." 2015 WL 4374027 at *1. With regard to his speedy trial claim, the MAC found that many of the delays were attributable to defense counsel, and even if the Commonwealth had not fulfilled its duty to ensure that the trial

7

begin within the sixty-day period, "dismissal is not a remedy available to a defendant who acquiesced in the delay." *Id*. at *2. The MAC further found that Shedlock had not met his burden to show that his counsel was ineffective. *Id*. With regard to the denial of his motion to proceed pro se, the MAC found that assuming *arguendo* that Shedlock had a constitutional right to proceed pro se, he did not make an unequivocal request to the trial judge, and so his claim failed. *Id*. at *3. Finally, in deciding whether any rational trier of fact could have found, beyond a reasonable doubt, the essential elements of sexual dangerousness, after a careful review of the legal criteria and the facts presented at trial, the MAC found that the evidence presented at trial furnished proof that Shedlock was an SDP and the judge did not err in so finding. *Id*. at *4.

On September 21, 2015, Shedlock filed an application for leave to obtain further appellate review (ALOFAR) in the SJC. (SA at 17.) Shedlock raised four issues: (1) that the "egregious violation of his right to a timely probable cause hearing . . . warrants dismissal," *id.* at 550; (2) that he "was denied the right to proceed pro se," *id.* at 555; (3) that "violations of the right to [a] timely trial combined with ineffective assistance of counsel and the denial of the right to proceed pro se . . . resulted in an unacceptable violation of [his] right to due process," *id.* at 558; and (4) that the state SDP statute was unconstitutionally vague as it failed to define the applicable standard of "likely to reoffend," *id.* at 558-59. On October 30, 2015, the SJC summarily denied the ALOFAR. *Id.* at 17.

Shedlock filed his petition for habeas corpus relief on October 25, 2016. (#1.)

IV. <u>Standard of Review</u>.

"[A] federal court may not issue a habeas petition 'with respect to any claim that was adjudicated on the merits in State court proceedings' unless the state court decision: 1) 'was contrary to, or involved an unreasonable application of, clearly established Federal law, as

8

determined by the Supreme Court of the United States' or 2) 'was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.'" *McCambridge v. Hall,* 303 F.3d 24, 34 (1st Cir. 2002) (quoting 28 U.S.C. § 2254(d) (Supp. II 1996)).  A decision is "contrary to" clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 405 (2000) (citing *Green v. French,* 143 F.3d 865, 869-70 (1998)). When the court reviews a claim under § 2254(d), relief will only be granted if the state prisoner can "show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility of fairminded disagreement." *Harrington v. Richter*, 562 U.S. 86, 103 (2011).

A petition for writ of habeas corpus may not be reviewed by a federal court until the petitioner has exhausted all available remedies in the state court system. 28 U.S.C. § 2254(b)(1). A claim has been exhausted where it "has been 'fairly presented' to the state courts." *Josselyn v. Dennehy*, 475 F.3d 1, 3 (1st Cir. 2007) (quoting *Baldwin v. Reese*, 541 U.S. 27, 29 (2004)). To show that he has fairly presented his federal claim to the state courts, a "petitioner must show that 'he tendered his federal claim [to the state's highest court] in such a way as to make it probable that a reasonable jurist would have been alerted to the existence of a federal question.'" *Barresi v. Maloney*, 296 F.3d 48, 51 (1st Cir. 2002) (alteration in original) (quoting *Casella v. Clemons*, 207 F.3d 18, 20 (1st Cir. 2000)).  It is not necessary for the state court to have addressed or decided the federal claim in order for exhaustion to be satisfied. *Gagne v. Fair*, 835 F.2d 6, 8 (1st Cir. 1987) (citing *Kines v. Butterworth*, 669 F.2d 6, 12 (1st Cir. 1981)).

When determining whether a claim has been properly exhausted, this court looks to the ALOFAR. *Adelson v. DiPaola*, 131 F.3d 259, 263 (1st Cir. 1997); *see also Gonsalves v. Thompson*, 396 F. Supp. 2d 36, 40 (D. Mass. 2005) (A petitioner "may not raise an issue before the Appeals Court, abandon it in his ALOFAR, and then raise it again in his habeas petition; rather, in order to survive the exhaustion requirement, an issue must be raised within the four corners of the ALOFAR.") (internal quotation marks and citation omitted).

V. <u>Analysis</u>.

A. <u>Right to Proceed Pro Se.</u>

Shedlock asserts that in denying his motion to proceed pro se, the state court violated his right to due process under the Fourteenth Amendment. He relies on Supreme Court cases in which a criminal defendant's right to self-representation was asserted. (#27 at 17.) Respondent argues that there is no Supreme Court case in which it is clearly established that there is even a constitutional right to counsel, much less the correlative right to proceed pro se, in sexually dangerous civil commitment proceedings. (#28 at 23.) The court here does not need to decide if there is clearly established Supreme Court precedent in this area, however, because assuming *arguendo* that Shedlock's rights in this regard are the same as a criminal defendant's, those rights were not violated.

The Supreme Court has held that where a criminal defendant unequivocally declares that he wants to represent himself, a judge may not force him against his will to accept an attorney. *Faretta v. California*, 422 U.S. 806, 836 (1975). The MAC cited *Commonwealth v. Martin*, 425 Mass. 718, 721 (1997) and *Commonwealth v. Meyers*, 51 Mass. App. Ct. 627, 628-629 (2001) in finding that Shedlock's rights were not violated. 2015 WL 4374027 at *3. In *Martin*, the SJC cited *Faretta* in affirming that a criminal defendant's right to proceed pro se is of constitutional

10

dimensions. *Martin*, 425 Mass. at 719. In *Meyers*, the MAC emphasized that a defendant must make an unequivocal request to act as his own lawyer in order to invoke the right. *Meyers*, 51 Mass. App. Ct. at 629.

In denying Shedlock's appeal, the MAC rightly held that Shedlock's request was not unequivocal. *Shedlock*, 2015 WL 4374027 at *3. "A fair reading of the record reveals that the judge [at the August 19, 2005 hearing on Shedlock's motion to proceed pro se] would have been permitted to conclude that the defendant expressed concern about further delay, wanted an immediate hearing on this motion to dismiss, but did not oppose the appointment of court-appointed counsel, and in fact acquiesced." *Id*.; SA at 180-196 (transcript of hearing.) At a further hearing on the motion to dismiss a week later, Shedlock, represented by new counsel, did not ask to represent himself again. (SA at 198-208 (transcript of hearing.))

As petitioner did not unequivocally communicate to the court that he wanted to proceed pro se, his constitutional right to represent himself, assuming *arguendo* that he had such a right, was not violated.

## B. Right to a Timely Determination of Dangerousness.

Shedlock argues that he was "denied his 14th Amendment Right to a Timely Determination of Dangerousness." (#27 at 10-17.) Respondent counters that this claim was not properly exhausted in state court, as Shedlock's argument "has been transformed both factually and legally" from the argument he presented in the state court. (#28 at 15.) This court, in its prior report and recommendation, found that while it was a close question, the argument in Shedlock's ALOFAR did alert the SJC to a federal constitutional claim, in that Shedlock argued that the delay in his trial "resulted in an unacceptable violation of [his] right to due process. U.S. Constitution, amendments 6, and 14; Massachusetts declaration of rights, article 12." (SA at

11

558.) *See Janosky v. St. Amand*, 594 F.3d 39, 50 (1st Cir. 2010) (holding that petitioner satisfies fair presentment requirement by citing a provision of the federal Constitution upon which the relevant claim rests). (#22 at 4.) Whether Shedlock properly exhausted this issue, however, is of no consequence, because he loses the argument on the merits, since his constitutional rights were not violated. *See* 28 U.S.C. § 2254(b)(2) (stating a petition for a writ of habeas corpus may be denied on the merits despite a petitioner's failure to exhaust state court remedies).

Long-standing Supreme Court precedent teaches that civil commitment constitutes a deprivation of liberty that triggers due process protections. *Kansas v. Hendricks*, 521 U.S. 346, 357 (1997) (court upholds Kansas SDP statute, finding that the court has "consistently upheld such involuntary commitment statutes provided the confinement takes place pursuant to proper procedures and evidentiary standards.") The Supreme Court elaborated, in the somewhat analogous context of a statute that permits prison officials to determine that a prisoner has a mental illness, and to subject him involuntarily to institutional care in a mental hospital, that such protections include: (1) written notice in advance of the action; (2) a hearing at which disclosure to the prisoner is made of the evidence being relied on, and an opportunity to be heard in person and to present documentary evidence is given; (3) an opportunity to present witnesses and to confront and cross-examine the government's witnesses; (4) an independent decisionmaker; (5) a written, reasoned decision; (6) "independent assistance," though not necessarily by a licensed attorney; and (7) effective and timely notice of these rights. *Vitek v. Jones*, 445 U.S. 480, 494-497 (1980).

Respondent asserts that even if the Supreme Court has set out general parameters concerning due process protections in SDP proceedings, there is no clearly established Supreme Court precedent requiring that a trial occur within any set time period. (#21 at 27-28.) This court

cannot accept the argument that because the Supreme Court has never addressed the specific number of days in which a civil SDP trial must occur, there is no amount of delay that would violate the due process protections that the Court clearly has applied to these cases. This court need not reach the question whether there is clearly established Supreme Court law on this point, however, because assuming that a constitutional right to a speedy trial attaches to civil commitment proceedings, Shedlock cannot demonstrate that his rights were violated.

In *Barker v. Wingo*, 407 U.S. 514, 530 (1972), the Supreme Court delineated the well-known balancing test for evaluating potential speedy trial violations, including the length of the delay, the reasons for the delay, the petitioner's assertion of his rights, and the prejudice to the petitioner. 407 U.S. at 530-33. In *Doggett v. United States,* 505 U.S. 647, 651 (1992) the Court refined the *Barker v. Wingo* analysis, holding that "simply to trigger a speedy trial analysis, an accused must allege that the interval between accusation and trial has crossed the threshold dividing ordinary from 'presumptively prejudicial' delay." 505 U.S. at 651 (quoting *Barker,* 407 U.S. at 530-531.)

While Shedlock did persistently complain about the delays in the case, none of the other factors weighs in favor of finding that his rights were violated. The MAC found that even though the government has a duty to ensure that trial commences within the sixty-day period, the trial judge properly denied Shedlock's motions to dismiss, given that most of the delays in getting to the probable cause hearing and trial were due to actions by petitioner, petitioner's refusal to comply with discovery orders, and other circumstances that constituted good cause for the delay. 2015 WL 4374027 at **1-2. As the MAC stated, "dismissal is not a remedy available to a defendant who acquiesced in the delay." *Id*. at *2.

Shedlock cannot show that the state court's ultimate conclusion was an unreasonable application of Supreme Court law, nor can he show that the state court judgment was based on an unreasonable determination of the facts. *See Rashad v. Walsh*, 300 F.3d 27, 35 (1st Cir. 2002) (evaluating facts as found by state court concerning speedy trial violation and finding that where state court found that "sizable portion of the delay was caused by the defendant," and he failed to demonstrate any actual prejudice, state court's denial of speedy trial claim was appropriate). He therefore loses this issue on the merits.

## VI. Conclusion.

For the above reasons, I RECOMMEND that Shedlock's claims pertaining to his right to proceed pro se and his right to a timely determination of dangerousness, be DENIED WITH PREJUDICE.

## VII. Review by District Court Judge.

The parties are hereby advised that any party who objects to this recommendation must file specific written objections with the Clerk of this Court within 14 days of the party's receipt of this Report and Recommendation. The objections must specifically identify the portion of the recommendation to which objections are made and state the basis for such objections. The parties are further advised that the United States Court of Appeals for this Circuit has repeatedly indicated that failure to comply with Rule 72(b), Fed. R. Civ. P., shall preclude further appellate review. *See Keating v. Secretary of Health & Human Servs.*, 848 F.2d 271 (1st Cir. 1988); *United States v. Emiliano Valencia-Copete*, 792 F.2d 4 (1st Cir. 1986); *Scott v. Schweiker*, 702 F.2d 13, 14 (1st Cir. 1983); *United States v. Vega*, 678 F.2d 376, 378-379 (1st Cir. 1982); *Park Motor Mart, Inc. v. Ford Motor Co.*, 616 F.2d 603 (1st Cir. 1980); *see also Thomas v. Arn*, 474 U.S. 140 (1985).

                                                      /s/ M. Page Kelley  
                                                      M. Page Kelley  
September 7, 2018                         United States Magistrate Judge